UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY,<br><br>                    Plaintiff,<br>     v.<br><br>TITAN WORLDWIDE, LLC et al,<br><br>                    Defendants. | CASE NO. 2:24-cv-01158-LK<br><br>ORDER DENYING MOTION TO DISMISS SECOND AMENDED COMPLAINT |

This matter comes before the Court on Defendant Titan Worldwide, LLC's motion to dismiss "Continental Casulaty [sic] Company's"[1] second amended complaint. Dkt. No. 50. For the reasons explained below, the motion is denied.

## I.   BACKGROUND

A.   **Factual Background**

Plaintiff Continental Casualty Company is a commercial insurer that insures Tigercat Industries, Inc., a Canadian forestry equipment manufacturer. Dkt. No. 47 at 1, 3. This lawsuit

---

[1] Titan misspells Continental's name throughout its motion and reply brief. Dkt. Nos. 50, 53.

ORDER DENYING MOTION TO DISMISS SECOND AMENDED COMPLAINT - 1

arises out of damage to a piece of Tigercat's equipment while it was en route to a customer in Rainier, Washington. *Id.* at 3. As a subrogee of Tigercat, Continental is standing in Tigercat's shoes as the real party in interest to this lawsuit.

In August 2023, Tigercat contracted with Defendant Titan to transport a large piece of forestry equipment, a Tigercat 1075C harvester, from Lucasville, Ohio to a customer in Rainier, Washington. *Id.*; Dkt. No. 47-1 (rate confirmation sheet). Titan is a shipping broker whose job it was to arrange for the shipping of Tigercat's cargo by selecting and contracting with a carrier. Dkt. No. 47 at 3; Dkt. No. 47-1 at 1. Among other things, Titan warranted that it "has entered into or will enter into a bilateral written contract of carriage with each carrier it utilizes in the performance of this Agreement[.]" Dkt. No. 47-1 at 2; Dkt. No. 47 at 3. Continental alleges that this provision prohibited Titan from "double brokering," which is where a broker arranges shipment with a carrier who then does not carry the cargo itself but instead subcontracts the cargo out to another carrier, without notice to the broker's customer and without any direct contract between the original broker and the ultimate carrier of the goods. Dkt. No. 47 at 4.

Continental alleges that Titan breached the warranty against double brokering. *Id.* Specifically, Titan entered into a bilateral contract with American Logistics Services (doing business as KTB) and designated it as a carrier. *Id.* at 3–4; *see* Dkt. No. 47-2. But instead of carrying the cargo itself, KTB brokered the shipment out to another carrier, RAF Trucking. Dkt. No. 47 at 4; Dkt. No. 47-3. Titan did not enter into a bilateral contract with RAF. Dkt. No. 47 at 4. Continental alleges that Titan's failure to do so breached the warranty provision on double brokering. *Id.*; Dkt. No. 47-1 at 2. Continental further alleges that the piece of equipment shipped was severely damaged in transit. Dkt. No. 47 at 4. It reimbursed Tigercat under the applicable insurance policy for the damage, and now seeks to recover from Defendants. *Id.* Specifically, Continental brings a breach of contract claim against all Defendants and a Carmack Amendment

claim, 49 U.S.C. § 14706, against RAF and KTB. *Id.* at 4–5.

B.  **Procedural Background**

On March 12, 2025, the Court granted Titan's motion to dismiss the amended complaint and the two crossclaims against it. Dkt. No. 46. Each party was given leave to amend their respective pleading within 21 days of the Court's order. *Id.* at 10. On April 2, Continental filed its second amended complaint, Dkt. No. 47,[2] which led to Titan filing another motion to dismiss, Dkt. No. 50. As with its first motion, Titan moves in the alternative for a more definite statement and to strike. *See id.*

II.  **DISCUSSION**

A.  **Titan's Motion to Dismiss the Amended Complaint is Denied**

1.  Legal Standards

When deciding a motion under Federal Rule of Civil Procedure 12(b)(6), a court must assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Instead, the plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "detailed factual allegations" are not required, a complaint must include "more

---

[2] Continental's second amended complaint does not comply with Local Civil Rule 15(a), which required it to "indicate on the proposed amended pleading how it differs from the pleading that it amends by bracketing or striking through the text to be deleted and underlining or highlighting the text to be added."

ORDER DENYING MOTION TO DISMISS SECOND AMENDED COMPLAINT - 3

than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

    2.  <u>Continental's Second Amended Complaint Adequately States a Breach of Contract Claim Against Titan</u>

As Titan notes, the Court previously dismissed Continental's breach of contract claim because Continental failed "to connect the dots between the duty breached and the injury asserted." Dkt. No. 46 at 8. Specifically, Continental's first amended complaint did "not explain how Titan's breach of the warranty provision against double-brokering proximately caused Continental's injury." *Id.* Titan argues that the second amended complaint fares no better. Dkt. No. 50 at 5–6. The Court disagrees.

Continental's revised allegations now explain how Titan's breach proximately caused its injury. Specifically, RAF—the carrier that damaged the cargo by "low-bridging" the load, causing the upper part of the cargo to collide with an overpass—"was hired only as a result of [Titan's] breach of the contract not to double-broker the load[.]" Dkt. No. 47 at 4. Because of that breach, "neither Titan nor Tigercat knew that RAF was the actual carrier of the cargo, and Tigercat had no opportunity to reject RAF as the carrier of the cargo." *Id.* Had Titan adequately performed its duties under the contract by "broker[ing] the load to an actual carrier it knew and vetted, rather than just taking a broker fee and handing the load over to KTB to hire the actual carrier," the cargo would not "have ended up in the care, custody, and control of an unscrupulous, careless, and dishonest carrier, or at least would have been unlikely to do so." *Id.* at 4–5.

Titan's other arguments for why Continental's breach of contract claim should be dismissed are not persuasive. It argues that "as the broker, [it] had no duty related to the actual transportation of the cargo." Dkt. No. 50 at 7. Maybe so, but that is not what Continental is alleging.

ORDER DENYING MOTION TO DISMISS SECOND AMENDED COMPLAINT - 4

Even if brokers do not generally owe a duty related to the actual transportation of the cargo—and Titan does not cite any case law for that proposition, let alone grapple with which state's laws apply here—Titan indisputably owes the duties arising out of the contract it entered into with Tigercat. Among others, that includes the duty to "enter into a bilateral written contract of carriage with each carrier it utilizes in the performance" of the contact. Dkt. No. 47-1 at 2. The fact that the damages stem from the lost cargo does not mean that Continental is alleging that Titan owed a duty related to the transportation of that cargo. Instead, the duty owed and breached appropriately arises out of the contract that Tigercat and Titan entered into. *See* Dkt. No. 47 at 5; *see also* Dkt. No. 47-1 at 3 (providing for liability of Titan "for breach of any . . . warranty . . . under these Terms and Conditions" and obligating Titan to "defend, indemnify and hold [Tigercat] harmless from and against any and all loss, damage, fees (including attorney's fees) or injuries . . . to the extent that such loss, damage, or injuries are caused or contributed to by the negligent or willful acts or omissions of [Titan], its employees, agents, contractors or subcontractors").

Titan also argues that it did not proximately cause the loss of the cargo because the cargo was not under its care and control. Dkt. No. 50 at 6. By Titan's logic, a broker could never be responsible for cargo damaged in transit—even damage that foreseeably results from the broker's own conduct—because it is not the direct carrier of that cargo. Once again, Titan fails to supply any supporting citations for this proposition—something that is especially unhelpful to the Court. Without any authority suggesting otherwise, the Court will not conclude as a matter of law that Titan's alleged breach could not have caused Tigercat's (and now Continental's) damages. *See Mendez v. Cnty. of Los Angeles*, 897 F.3d 1067, 1078 (9th Cir. 2018) ("it is common for injuries to have multiple proximate causes").

Titan's next argument—that Tigercat did not "object" to KTB serving as the carrier—is equally unpersuasive. The entire thrust of the complaint is that KTB did *not* serve as a carrier.

ORDER DENYING MOTION TO DISMISS SECOND AMENDED COMPLAINT - 5

Specifically, the complaint alleges that Titan "cede[d] its responsibilities" to KTB, who functioned as a second broker and hired (without Tigercat's knowledge) an "unscrupulous, careless, and dishonest carrier," RAF. Dkt. No. 47 at 5. As Continental argues, Tigercat should have had the opportunity to "evaluate, accept or reject RAF," but did not get that opportunity because Titan never directly contracted with RAF, as the contract required. Dkt. No. 51 at 7.

Finally, Titan asks the Court to conclude as a matter of law that it did not breach the clause requiring it to enter into a bilateral contract with each carrier it uses. Dkt. No. 50 at 6. But the Court has already concluded that the contract language is reasonably susceptible to Continental's interpretation of it, and that dismissal on this basis is not appropriate at this stage. Dkt. No. 46 at 7. Nothing has changed since the Court first ruled on this issue, and Titan's argument regarding what that clause means certainly has not gotten any more persuasive. Indeed, it is law of the case, *United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012), and Titan's decision to renew an argument the Court has already rejected was unwarranted at best. *See* LCR 11(c).

For the above reasons, Titan's motion to dismiss the second amended complaint's breach of contract claim is denied.

**B.    Titan's Alternative Motions for a More Definite Statement and to Strike Are Denied**

1. Titan's Motion for a More Definite Statement is Denied

Rule 12(e) enables a party to move for a more definite statement of a pleading that is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The motion must be considered in light of the liberal pleading standards set forth in Rule 8(a)(2). *Vaughn v. Cohen*, No. 3:23-CV-06142-TMC, 2025 WL 19854, at *1 (W.D. Wash. Jan. 2, 2025). "Motions for a more definite statement are disfavored, and ordinarily restricted to situations where a pleading suffers from unintelligibility rather than want of detail." *McMillan v. Cpride Grp. LLC*, No. 2:21-CV-549-BJR, 2022 WL 1203741, at *7 (W.D. Wash. Apr. 22, 2022); *see also Advanced*

*Hair Restoration LLC v. Bosley Inc.*, No. C23-1031-KKE, 2024 WL 4544930, at *4 (W.D. Wash. Oct. 22, 2024) ("This district court has recognized that a Rule 12(e) motion" is "properly denied where the complaint notifies the defendant of the substance of the claims asserted.").

Titan argues that "[t]he pleading should have three separate breach of contract counts, one for each defendant, with a copy of the specific contract that each defendant is alleged to have breached." Dkt. No. 50 at 9. It is true that the second amended complaint's breach of contract claim leaves a lot to be desired, and that separating the breach of contract claim into three counts would be consistent with Federal Rule of Civil Procedure 10(b). Dkt. No. 53 at 5. But Continental's failure to do so still does not justify granting Titan's Rule 12(e) motion. The separation of claims under Federal Rule of Civil Procedure 10(b) is only required "[i]f doing so would promote clarity," Fed. R. Civ. P. 10(b), and when necessary to "facilitate a clear presentation of the issues presented by the case," Wright & Miller, 5A Fed. Prac. & Proc. Civ. § 1324 (3d ed.). Titan is clearly on notice of the claim against it, including which contract and which provision it is alleged to have breached. The breach of contract allegations against Titan are not "so vague or ambiguous" that Titan "cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). After all, Titan *did* prepare a response in the form of its motion to dismiss, and that motion reflects an adequate understanding of the nature of the claims against it. *Cf. Dantzler, Inc. v. Hubert Moore Lumber Co.*, No. 7:13-CV-56 HL, 2013 WL 5406440, at *3 (M.D. Ga. Sept. 25, 2013) (denying a motion to dismiss where the court "ha[d] no problem differentiating between the two claims, and [the defendant] drafted its motion to dismiss without indicating any confusion over the . . . allegations"). For these reasons, Titan's Rule 12(e) motion is denied.

2. <u>Titan's Motion to Strike is Denied</u>

Rule 12(f) allows courts to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, the rule "does not

authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010). But that is what Titan is asking the Court to do here. It argues that there is "no legal basis" for an award of attorney's fees based on the contract's limitation of liability clause, Dkt. No. 50 at 10, not that the request for attorney's fees falls into one of the Rule 12(f) categories of material that may be properly stricken. This is exactly the use of Rule 12(f) that *Whittlestone* prohibits, because striking a portion of the damages sought based on a contractual limitation of liability clause requires the Court to resolve a disputed legal question (whether the contract does, in fact, prohibit an award of attorney's fees), which the Court cannot do on a Rule 12(f) motion. *Whittlestone*, 618 F.3d at 973 (agreeing that courts may not resolve disputed and substantial factual or legal issues in deciding a motion to strike). Titan's Rule 12(f) motion is thus denied.

### III.  CONCLUSION

For the reasons stated above, the Court DENIES Titan's motion to dismiss the second amended complaint. Dkt. No. 50. Further, as indicated above, Continental's second amended complaint does not comply with Local Civil Rule 15(a) because it does not "indicate . . . how it differs from the pleading that it amends by bracketing or striking through the text to be deleted and underlining or highlighting the text to be added." LCR 15(a). The Court thus ORDERS Continental to re-file its second amended complaint in a manner that complies with Local Civil Rule 15(a) within seven days of this Order. As the Court has repeatedly cautioned in this case, future violations of the applicable rules will result in sanctions.

Dated this 14th day of July, 2025.

*Lauren King*
Lauren King
United States District Judge